**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ira Marvin DICKEY,**
**Defendant–Appellant.**

**No. 89–50340.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1990.

Decided Jan. 23, 1991.

Knut S. Johnson, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Carol C. Lam and Nancy L. Worthington, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Before REINHARDT and LEAVY, Circuit Judges, and KING *, District Judge.

LEAVY, Circuit Judge:

On January 4, 1989, Ira Marvin Dickey was indicted on three counts of violating federal currency laws: possession of an engraved plate for the printing of counterfeit $20 bills (18 U.S.C. § 477), printing of counterfeit $20 bills (18 U.S.C. § 471), and possession of three counterfeit $100 bills (18 U.S.C. § 472). On February 27, 1989, Dickey pleaded guilty to the second count of the indictment; the two remaining counts were dismissed at sentencing.

As the result of the appellant's cooperation, the government recommended a downward departure in his sentence to a period of twelve months' incarceration. *See* 18 U.S.C. § 3553(e); United States Sentencing Comm'n, *Guidelines Manual*, § 5K1.1 (Oct. 15, 1988) (*"Guidelines Manual"*). Dickey argued for an additional downward departure based on both "aberrant behavior" (i.e., he had never done anything like this before) and a defense of imperfect entrapment, and asked that any period of confinement be served in a Community

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

Treatment Center ("CTC") as part of his probation. The district court accepted the government's recommendation and sentenced the appellant to one year's imprisonment and three years' probation, from which Dickey now appeals. For the reasons set forth below, we dismiss part of this appeal, and affirm in part, and remand for clarification on the single issue of aberrant behavior.

## I

At the outset we note that Dickey has served his twelve month period of incarceration, and the government argues that this appeal is thereby rendered moot. We disagree.

When a sentence imposed may have collateral consequences for a defendant in any possible future sentencing, the appeal from such a sentence, even if already served, is not moot. *United States v. Mares–Molina*, 913 F.2d 770, 773 n. 3 (9th Cir.1990); *United States v. Montenegro–Rojo*, 908 F.2d 425, 431 n. 8 (9th Cir. 1990). Because the appellant was sentenced to a term of imprisonment in excess of sixty days, any possible future sentencing under the Guidelines would result in an automatic increase of his criminal history score by two points instead of the single point he would receive had he been sentenced to probation. *See Guidelines Manual*, § 4A1.1(b), (c); *Mares–Molina*, 913 F.2d at 773 n. 3; *Montenegro–Rojo*, 908 F.2d at 431 n. 8. Accordingly, this appeal is not moot and we have jurisdiction over it.

## II

Dickey's first argument is that, because of the degree of his cooperation with the government, the district court erred by limiting the extent of its downward departure to only twelve months' incarceration instead of a lesser period of CTC probation. This contention is without merit.

A district court's discretionary refusal not to depart in sentencing is not reviewable on appeal. *United States v. Corley*, 909 F.2d 359, 362 (9th Cir.1990) (citing *United States v. Morales*, 898 F.2d 99, 103 (9th Cir.1990)). Moreover, the extent to which a district court chooses to exercise its discretion in fixing a downward departure is also not reviewable on appeal. *United States v. Vizcarra–Angulo*, 904 F.2d 22, 23 (9th Cir.1990). Because the appellant complains only about the extent of the downward departure in his sentence, we lack jurisdiction to consider this portion of his appeal. *See id.*

## III

Dickey's second argument is that the district court failed to exercise its discretion by not determining whether his actions constituted aberrant behavior which, in light of his status as a first offender, would warrant a downward departure to CTC probation. This contention is in turn based on the appellant's argument that the district court erroneously believed that the Guidelines do not provide for downward departures based on aberrant behavior.

It is clear under the Guidelines that "aberrant behavior" and "first offense" are not synonymous. The Guidelines make due allowance for the possibility of a defendant being a first offender. *See Guidelines Manual*, Ch. I, Part A, Introduction, para. 4(d) ("[T]he Guidelines work as follows in respect to a first offender"); *United States v. Carey*, 895 F.2d 318, 325 n. 4 (7th Cir.1990) ("[T]he Commission adequately considered the defendant's first offender status in formulating the Guidelines"). Nevertheless, the Guidelines recognize that a first offense may constitute a single act of truly aberrant behavior justifying a downward departure. *See Guidelines Manual*, Ch. I, Part A, Introduction para. 4(d) (with respect to first offenders, "[t]he Commission ... has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures"); *United States v. Russell*, 870 F.2d 18, 20 (1st Cir. 1989) ("The Sentencing Commission made clear that departures are permitted in atypical cases[;] * * * [s]uch 'aberrant behavior' ... may justify departures in appropriate cases").

Although there are several reported decisions mentioning aberrant behavior in the context of first offenses,[1] our research has disclosed only two cases which have squarely decided the question whether the facts of a particular first offense may warrant a finding of aberrant behavior justifying a downward departure.

The first of these, *United States v. Russell, supra,* involved the driver of an armored truck who, as the result of a bank error, had a bag containing $80,000 in cash literally dumped in his lap. In a spontaneous act the driver temporarily yielded to the temptation to keep the money, but shortly thereafter confessed his wrongdoing, returned his share of the loot, and cooperated fully in the subsequent investigation. The Court of Appeals for the First Circuit held that the facts of the case warranted a finding of aberrant behavior but remanded to the district court for clarification of the lower court's reasons for the sentence imposed. 870 F.2d at 20–21.

The second case, *United States v. Carey, supra,* involved a defendant who had engaged in a check-kiting scheme over a period of at least fifteen months. The Court of Appeals for the Seventh Circuit held that, unlike the situation in *Russell,* the defendant's actions could not be characterized as aberrant behavior because they consisted of hundreds of overt acts taking place over a prolonged period of time. 895 F.2d at 325.

■ If *Russell* and *Carey* may be said to represent the terminal points on what, for lack of a better expression might be called the aberrant behavior spectrum, then the instant appeal would appear to fall somewhere between the two. Unfortunately, it is not clear from the record of the sentencing below whether the district court simply declined to exercise its discretion in favor of a downward departure further than the one recommended and accepted based on Dickey's cooperation, or whether the court concluded as a matter of law that it could

not depart downward based on aberrant behavior. If the court's ruling was a discretionary act, then we clearly lack jurisdiction to entertain this portion of Dickey's appeal. *See United States v. Corley,* 909 F.2d at 362; *United States v. Vizcarra–Angulo,* 904 F.2d at 23. On the other hand, if the district court's ruling was a matter of law, it would be subject to *de novo* review here. *See United States v. Carvajal,* 905 F.2d 1292, 1294 (9th Cir. 1990). Since we are unable to determine from the record whether the district court's ruling on this issue was an exercise of its discretion or a legal ruling, we must remand for clarification on this question.

### IV

■ The appellant's third and final argument is that the district court erred by rejecting his defense of imperfect entrapment. Dickey contends that the government informant "talked him into" printing the counterfeit money, and that this alleged governmental misconduct constitutes a mitigating factor justifying a downward departure in sentencing.

The only reported decision to have considered this precise question rejects this argument. In *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990), the Court of Appeals for the Eighth Circuit held that, at least where a defendant pleads guilty to an offense, "[w]e see no warrant for the argument that governmental ... misconduct should mitigate the sentence of an admittedly guilty defendant." *Id.* at 787.

Although the record is not clear whether the district court ruled as a matter of discretion that it would not depart from the Guidelines because it found the uncontroverted evidence failed to support an imperfect entrapment defense, or whether it held as a matter of law that it could not so depart, we need not remand for a clarification on this point. We find the Eighth Circuit's treatment of this question persuasive and agree with its holding.

---

**1.** *See, e.g., United States v. Pozzy,* 902 F.2d 133, 137–38 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990); *United States v. Sheffer,* 896 F.2d 842, 846 (4th Cir.), *cert.*

*denied sub nom. Rains v. United States,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990); *United States v. Carey,* 895 F.2d at 324–25; *United States v. Russell,* 870 F.2d at 19–20.

Accordingly, we DISMISS that portion of Dickey's appeal dealing with the extent of the downward departure, we AFFIRM on the imperfect entrapment defense, and we REMAND to the district court for a clarification of its ruling on the question of aberrant behavior.

REINHARDT, Circuit Judge, concurring in part and dissenting in part:

I join in Parts I, II, and III of the court's opinion. However, because in my view the defense of imperfect entrapment is a "mitigating circumstance of a kind ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0, I cannot agree with my colleagues' conclusion that such a defense, as a matter of law, can never serve as the basis for a downward departure. Accordingly, I dissent from Part IV of the opinion.

The majority holds that a defense of imperfect entrapment can never serve as a basis for a downward departure from the Guidelines sentencing range. My colleagues' conclusion cannot be based on the fact that no provision of the Guidelines expressly authorizes a downward departure for an imperfect entrapment defense. After all, the whole point of a *departure* is to deal with circumstances which the Guidelines do not take into account or inadequately take into account.[1] I take it then that the majority believes that as a matter of law the defense of imperfect entrapment is simply not the type of mitigating factor that could ever justify a downward departure. I disagree.

Contrary to the reasoning of the Eighth Circuit, *see United States v. Streeter*, 907 F.2d 781, 787 (8th Cir.1990), the fact that a defendant has not made out an entrapment defense sufficient to mitigate *guilt* does not dispose of the question whether his reluctant participation in a criminal activity should mitigate his *sentence*. In order for

a defendant to prevail on an entrapment defense, he "must show that he was induced to commit the crime by a government agent and that he was not predisposed to commit the crime." *United States v. Moncini*, 882 F.2d 401, 406 (9th Cir.1989). By pleading guilty, Dickey effectively admitted that he could not sustain the burden of proving both of these elements. He did not have an entrapment defense. The fact that a defendant cannot obtain an acquittal on an entrapment defense does not mean, however, that the government's role in inducing him to commit the crime is irrelevant to the length of the sentence he should receive. Even though he may be unable to establish an entrapment defense, he may well be able to show that he participated reluctantly.

For example, a defendant may have no predisposition to commit the crime and yet be convicted if the entrapper was not acting as a government agent. The defendant must prove both elements of the entrapment defense. Moreover, we have taken a rather narrow view of when someone is a government agent. Even a long-time paid government informant has been held not to be such an agent for purposes of an entrapment defense. *See United States v. Busby*, 780 F.2d 804, 806 (9th Cir.1986). Thus, under our precedents, someone who has no predisposition to commit a crime, and who is induced to commit that crime by the repeated suggestions of a paid government informant[2] will not be entitled to an entrapment defense—although had the entrapper been on a full time D.E.A. salary the defense would be available. Clearly someone who has been "entrapped" by a paid informant is less culpable than a willing criminal who needs neither inducement nor persuasion to commit his crime.

It seems evident that reluctance or lack of predisposition that for one reason or another does not amount to a complete entrapment defense could under some cir-

---

1. As neither the government nor my colleagues dispute, the Guidelines nowhere take imperfect entrapment into account as a mitigating factor.

2. The record indicates that the person who Dickey claims induced him to commit the

crimes involved here was a government informant. Thus, his attorney may have properly advised him that he could not prevail on an entrapment defense because he was not entrapped by a government agent.

cumstances justify a shorter sentence than would be appropriate for a more willing and enthusiastic participant in the same crime. This would be the case whether one views incarceration as serving a primarily retributive or incapacitative purpose. *See* U.S.S.G. ch. 1, Pt. A, Introduction, 3 p.s. ("As a practical matter, in most sentencing decisions both [of these] philosophies may prove consistent with the same result.") A reluctant criminal is one who is both less morally blameworthy than an enthusiastic one and less likely to commit other crimes if not incarcerated.

It is probable that only in very rare cases would an imperfect entrapment defense justify a Guidelines departure. And I do not mean to suggest that this is necessarily one of those rare cases. Nevertheless, the defendant is entitled to have the district court consider the question. No policy or provision of the Guidelines justifies the majority's decision to foreclose completely the possibility that imperfect entrapment may on occasion justify a downward departure.

As the majority notes, the record does not clearly disclose whether the district court exercised its discretion not to depart downward based upon a determination that Dickey was not entitled to a defense of imperfect entrapment or whether the district court believed that such a defense could never serve as the basis for a departure. Because in my view the latter belief would constitute reversible error, I would remand on this issue so that the district court may make the necessary discretionary determination here as well.