993 F.2d 886
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Lani Jean REYNOLDS, Defendant-Appellee.
 No. 92-50511.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1993.
Decided May 7, 1993.
 
 Before FARRIS, NORRIS and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lani Jean Reynolds pleaded guilty to two counts of unarmed bank robbery. The district court granted her a downward departure from a guideline sentence range of 41 to 51 months to a sentence of three months imprisonment and three months in a halfway house. The government appeals the district court's decision to depart downward.
 
 
 3
 We affirm.
 
 
 4
 We review departures from the Sentencing Guidelines using a three-step analysis. We must determine whether 1) the district court had the legal authority to depart, 2) the factual findings justify a departure, and 3) the extent of the departure was reasonable. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991).
 
 I. AUTHORITY TO DEPART
 
 5
 The district court may depart from the Guideline range if it finds an aggravating or mitigating circumstance that the Commission either did not consider, or did not sufficiently consider, in formulating the Guidelines. Id. at 746; GUIDELINES MANUAL, UNITED STATES SENTENCING COMMISSION, § 5K2.0, at 330. "If the circumstance is one not adequately considered, the court is legally authorized to depart so long as the circumstance is consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), with the Guidelines, and of course, with the Constitution." Lira-Barraza, 941 F.2d at 746. We review whether the district court had the authority to depart de novo. Id. The district court granted Reynolds a downward departure based on two grounds: 1) lack of youthful guidance, and 2) extraordinary family circumstances.
 
 
 6
 In United States v. Floyd, 945 F.2d 1096, 1102 (9th Cir.1991), we held that a "youthful lack of guidance" was a proper basis for a downward departure: "[A] convicted defendant is not less culpable merely because he has present family ties; he might, however, be considered less culpable if he grew up without any meaningful guidance from his parents and his society." Id. The government argues that the Sentencing Commission adopted a clarifying amendment, U.S.S.G. 5H1.12, specifically to disapprove the Floyd decision. We "confer no weight on the [ ] amendment," because the Commission did not provide that the amendment's purpose was merely to clarify, rather than change, existing law. United States v. Martinez, 946 F.2d 100, 102 (9th Cir.1991). The amendment did not take effect until November 1, 1992, after Reynolds was sentenced. At the time that the district court sentenced Reynolds, it had the authority to depart downward based on a "youthful lack of guidance". Floyd, 945 F.2d at 1102.
 
 
 7
 The district court found that severe financial and emotional crises, brought on by family difficulties, caused Reynolds to commit the crimes. The court found that these crises, combined with the harm that a lengthy incarceration would cause Reynolds' children, constituted extraordinary family circumstances warranting a downward departure.
 
 
 8
 The government argues that, as a matter of law, financial and emotional pressures cannot constitute extraordinary family circumstances. In United States v. Fairless, 975 F.2d 664, 667 (9th Cir.1992), we held that aberrant behavior by a first time offender is a proper basis for a downward departure. We held that the district court properly considered the influence that mental illness and financial pressures had on the defendant to determine whether the defendant's behavior was "aberrant". Id. at 668. Extreme financial pressure combined with mental illness can also provide a proper basis for finding extraordinary family circumstances in an unusual case. With the exception of specifically forbidden factors[1], the Commission did not "intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch. 1, Pt. A, § 4(b). The district court had the authority to depart. See United States v. Cook, 938 F.2d 149, 153 (9th Cir.1991) (holding that the court can depart based on a combination of factors that make the defendant's case unusual).
 
 II. FACTUAL FINDINGS
 
 9
 We review for clear error the factual findings supporting the circumstances justifying a departure. Lira-Barraza, 941 F.2d at 746.
 
 
 10
 The district court articulated several factors that support its finding that Reynolds suffered from a youthful lack of guidance: her teenage pregnancy, her mother's stroke, her mental illness. Reynolds also suffered the cruelty of exile to foster parents to hide her teenage pregnancy from the community. Her father not only failed to give her needed love and guidance, his harsh strictness plainly impeded her emotional development. The government recognizes that Reynolds has had difficulties, but argues that the district court clearly erred in finding that these difficulties amount to a youthful lack of guidance. The government argues that the defendant in United States v. Floyd--where the court also found a youthful lack of guidance--had a worse childhood than Reynolds, because he did not get a proper education and was abandoned by his parents at age 17. See Floyd, 945 F.2d at 1099. The government's analogy to Floyd is not helpful, because Reynolds suffered hardships that are qualitatively different from the hardships suffered by Floyd. While Reynolds received a proper education and was not abandoned by her parents, Floyd apparently did not suffer from mental illness and he could not have experienced a traumatic teenage pregnancy. A comparison with Floyd does not demonstrate that the district court clearly erred in finding a youthful lack of guidance.
 
 
 11
 The district court had the discretion to weigh the positive factors in Reynolds' childhood against the negative factors. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (citations omitted), cert. denied, 112 S.Ct. 3056 (1992).
 
 
 12
 The government also argues that the district court clearly erred in finding that extraordinary family circumstances caused Reynolds to commit bank robbery. The government contends that Reynolds' financial and personal difficulties do not distinguish her from most other defendants in the criminal justice system. The district court's finding was not clearly erroneous as the court relied on a combination of factors which make the case unique. See Cook, 938 F.2d at 153.
 
 III. EXTENT OF DEPARTURE
 
 13
 The court reviews the extent of the departure to determine whether it was "unreasonable". Lira-Barraza, 941 F.2d at 751. The court should reverse "only if the choice is 'unreasonable' in light of the standards and policies incorporated in the Act and the Guidelines." Id. The district court "should include a reasoned explanation of the extent of the departure...." Id.
 
 
 14
 The government argues that the district court's sentence undermined the Guidelines' objective that similarly situated defendants receive comparable punishment. We understand the argument but reject it. An ordinary bank robber should receive a sentence within the Guideline range. The extent of the downward departure was not unreasonable considering Reynolds' unique circumstances.
 
 
 15
 Affirmed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The court cannot take into account the defendant's race, sex, national origin, creed, religion, socioeconomic status, or physical condition. See U.S.S.G. Ch. 1, Pt. A, § 4(b)